**HARTFORD CASUALTY INSURANCE COMPANY, Plaintiff,**

v.

**Wagih M. SHEHATA, M. D., and Mary Momb, Defendants.**

No. 76 C 3573.

United States District Court, N. D. Illinois, E. D.

Feb. 24, 1977.

Jerome N. Groark and Terrence E. Kiwala, Rooks, Pitts, Fullagar & Poust, Chicago, Ill., for plaintiff.

George W. Hamman, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

Plaintiff has brought this diversity action seeking a declaratory judgment that its professional liability insurance policy with the defendant Shehata does not afford coverage in a pending state court action against Shehata. Before the court is plaintiff's motion for judgment on the pleadings. Because the material facts are undisputed and resolution of the coverage issue involves only the construction of the policy and the state court complaint, judgment on the pleadings is appropriate. We will grant judgment on the pleadings in favor of the plaintiff.

The coverage provision of the professional liability insurance policy in question here provides as follows:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Injury arising out of the rendering of or failure to render, during the policy period, professional services in the practice of the named insured's profession as a physician or surgeon by the named insured

. . .

The Company shall have the right and duty to defend any suit against the insured seeking damages, even if any of the allegations of the suit are groundless, false of fraudulent . . . .

The term "professional services" is defined in the policy as "services performed in the practice of the profession of physician or surgeon . . . ."

The defendant insured is a radiologist. The other named defendant is a nurse who has commenced a state negligence action against the insured. In her state complaint, the nurse alleges that while she and the insured were working in a hospital, the insured handled a radioactive protective cart in a negligent manner so as to cause it to strike her with great force and injure her. She alleges that when this incident occurred the insured was pulling the cart in order to render professional care to a patient.[1]

The sole question before us is whether the pulling of a radioactive protective cart is a service performed in the practice of the profession of a physician. We have concluded that it is not.

Illinois law applies,[2] but this question is one of first impression under Illinois law. In *Keepes v. Doctors Convalescent Center, Inc.*, 89 Ill.App.2d 36, 231 N.E.2d 274 (1967), however, an Illinois court construed similar language. The policy in *Keepes* excluded coverage for injuries due to "[t]he rendering or failure to render medical, surgical, dental, x-ray or nursing service . . . [and] any service or treatment conducive to health or of a professional nature." The injury to the plaintiff in *Keepes* occurred when a nurse's aide laid the plaintiff, a retarded child, on the floor and went to prepare his bath. While the aide was out of the room, the plaintiff burnt himself on a radiator. The court noted that this service was connected with normal living and that nothing was being done with the plaintiff which would not be done in an ordinary home. In holding that the nurse's aide was not performing a nursing or professional service in preparing the plaintiff for his bath, the court looked to the nature of the service provided by the tortfeasor, rather than the tortfeasor's title as nurse's aide.

Courts in other jurisdictions have used similar reasoning in construing the term "professional services." In *Gulf Insurance Co. v. Gold Cross Ambulance Service Co.*, 327 F.Supp. 149 (W.D.Okl.1971), the court held that "whether particular work is of a professional nature is determined by the work in question and not by the title of the worker." *Id.* at 152. The court quoted from *Marx v. Hartford Accident and Indemnity Co.*, 183 Neb. 12, 157 N.W.2d 870 (Sup.Ct.1968) where the Supreme Court of Nebraska had stated:

A professional act or service is one arising out of a vocation, calling, occupation or employment involving specialized knowledge, labor or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual.

327 F.Supp. at 152. *Accord, Multnomah County v. Oregon Automobile Insurance Co.*, 256 Or. 24, 470 P.2d 147 (Sup.Ct.1970).

Following this reasoning, we have decided that pulling a radioactive protective cart is not a service performed in the practice of the profession of a physician. It was a physical or manual act as opposed to one that is primarily mental or intellectual; it did not involve any specialized knowledge, labor or skill.

The state complaint alleges that the insured was pulling the cart in order to render professional care to a patient. For the purposes of this motion, we interpret this allegation to state that the insured was intending to use the cart in connection with the care of some patient and, at the time the accident happened, he was on his way to the place where he would perform a professional service. We realize that on this basis it could be argued that the doctor had already begun to render the professional ser-

---

1. This is not a typical "malpractice" case where a patient is complaining of negligent medical care. However, the insurance policy at issue here does not restrict coverage to injuries incurred by patients, and plaintiff does not argue that coverage should be so limited.

2. In presenting their arguments, the insured and the insurer assume the application of Illi-

nois law to the insurance contract issue. Therefore, we assume that the parties have agreed that, under *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970), Illinois has the most significant relationship to the insurance contract. *Cf. State Automobile Mutual Insurance Co. v. Spray*, 547 F.2d 397 (7th Cir. 1977).

vice since he was equipping himself to render it. The argument is not without some logic, but, on a practical level, we think a distinction must be drawn between preparing to perform the service and actually performing it.[3] The line will not always be easy to draw (the distinction between something intellectual and something merely manual, for instance, may not always be clear within a surgical context) but a contrary rule would extend coverage beyond what we believe is the common understanding of the terms used in the policy.

We hold, therefore, that the conduct complained of in the state action was not covered by the insured's professional liability insurance policy, and that the plaintiff has no duty to defend or indemnify the insured in that action.

Accordingly, plaintiff's motion for judgment on the pleadings is granted.

---

**3.** The Ohio Supreme Court appears to draw the line between direct and indirect connection with the practice of one's profession. See *American Policyholders Insurance Co. v. Michota*, 156 Ohio St. 578, 103 N.E.2d 817, 819 (Sup.Ct.1952). We believe that such a test is too vague to afford a standard of decision for a case of the kind we have here.