DUKE UNIVERSITY v. ST. PAUL FIRE AND MARINE INSURANCE COMPANY

No. 8914SC33

(Filed 4 January 1990)

**Insurance §§ 150, 6.2 (NCI3d)— hospital liability insurance—exclusion for professional services—professional services defined**

Summary judgment was properly granted for plaintiff in an action to recover damages for defendant's refusal to provide liability coverage and legal defense under a general liability insurance policy which contained an exclusion for the rendering of professional services. Decedent died from injuries resulting from a fall as she tried to rise from a dialysis chair. Plaintiff's uncontradicted affidavits establish that, if plaintiff's employees were negligent, their negligence consisted of failing to lock the casters on the dialysis chair, failing to stabilize the chair by other means, or failing to adequately support the decedent as she rose. "Professional services," when it appears in a provision excluding coverage, must be interpreted

DUKE UNIVERSITY v. ST. PAUL FIRE AND MARINE INS. CO.

[96 N.C. App. 635 (1990)]

to mean only those services for which professional training is a prerequisite to performance. Although the dialysis chair here was a specialized piece of equipment, the injury was not related to any special function of the chair and may have been avoided by simply locking the casters on the chair or by holding the chair. Those tasks are purely manual and no special training is required to know that a chair with casters may move when someone attempts to rise from it.

**Am Jur 2d, Insurance § 726.**

APPEAL by defendant from judgment entered 17 November 1988 by *Judge Henry W. Hight, Jr.* in DURHAM County Superior Court. Heard in the Court of Appeals 29 August 1989.

Plaintiff brought this action to recover damages for defendant's refusal to provide liability coverage and legal defense under a general liability insurance policy.

The underlying action was a wrongful death action filed against plaintiff in which it was alleged that a patient at plaintiff's dialysis center died as a result of injuries sustained in a fall caused by the negligence of plaintiff's employees. Defendant denied coverage and refused to defend the action on the grounds that the policy excluded coverage for liability arising out of the rendering of professional services by plaintiff's hospital operations. Plaintiff paid $75,000.00 as damages in settlement of the wrongful death action. Thereafter, plaintiff filed this action to recover from defendant the amount of the settlement plus $3,521.12 for plaintiff's expenditures in defending and settling the lawsuit. The trial court granted plaintiff's motion for summary judgment. From a judgment for plaintiff in the amount of $78,521.12, defendant appeals.

*Maxwell, Martin, Freeman & Beason, P.A., by John C. Martin, for plaintiff-appellee.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Theodore B. Smyth and Kari Russwurm, for defendant-appellant.*

PARKER, Judge.

The question presented by this appeal is whether the trial court erred in entering summary judgment for plaintiff because plaintiff's insurance policy excluded coverage for liability resulting from the wrongful death action. Summary judgment is appropriate

DUKE UNIVERSITY v. ST. PAUL FIRE AND MARINE INS. CO.

[96 N.C. App. 635 (1990)]

when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 690, 340 S.E.2d 374, 377 (1986). It is undisputed in this case that plaintiff's policy required defendant to provide a defense in lawsuits based upon covered claims. By refusing to defend the wrongful death action, defendant obligated itself to pay the amount and costs of a reasonable settlement if its refusal was unjustified. *Nixon v. Insurance Co.*, 255 N.C. 106, 112-13, 120 S.E.2d 430, 434 (1961); *Ames v. Continental Casualty Co.*, 79 N.C. App. 530, 538, 340 S.E.2d 479, 485, *disc. rev. denied*, 316 N.C. 730, 345 S.E.2d 385 (1986). In the proceedings below, defendant admitted that plaintiff settled the action for $75,000.00 and paid $3,521.12 for legal fees and expenses in defending the action. Defendant has not challenged the reasonableness of the settlement in this action; therefore, we need not consider the issue. *See Wilson v. State Farm Mut. Auto. Ins. Co.*, 92 N.C. App. 320, 326, 374 S.E.2d 446, 450 (1988).

The sole remaining issue is whether the policy required defendant to defend the wrongful death action. Since this issue is determined by interpreting the language of the policy, it is a question of law which may be resolved by summary judgment. *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. at 691, 340 S.E.2d at 377. The insurer's duty to defend is determined by the pleadings in the underlying lawsuit. *Id.* The duty to defend exists if the events alleged in the pleadings are covered under the terms of the policy, and any doubt as to coverage must be resolved in favor of the insured. *Id.* at 693, 340 S.E.2d at 378. If the claim is within the coverage of the policy, the insurer's refusal to defend is unjustified even if it is based upon an honest but mistaken belief that the claim is not covered. *Indiana Lumbermen's Mutual Ins. Co. v. Champion*, 80 N.C. App. 370, 376, 343 S.E.2d 15, 19 (1986).

Plaintiff's basic policy excludes coverage for liability resulting from performing or failing to perform professional services. The general exclusion is modified by the following endorsement:

> Under this section, you're protected against claims for injuries that result from the providing or withholding of professional services by any of your non-hospital operations. The company shall in no way be liable for any claims arising out of the providing or failure to provide professional services by your hospital operations.

The parties do not dispute that the dialysis center is a "hospital operation" for purposes of the policy. The issue in this case is whether the wrongful death action is a claim "arising out of the providing or failure to provide professional services."

The complaint in the wrongful death action alleged that the decedent was injured when two attendants who were lifting her from a dialysis table to a wheelchair dropped her to the floor. Affidavits filed by plaintiff in the present case establish that decedent did not undergo dialysis on a table but received the treatment in a specially designed dialysis chair. The affidavits further establish that decedent fell when she attempted to get out of the chair and the fall occurred because the chair was equipped with casters which caused the chair to slide out from under her as she rose. The affidavits tend to show that the negligence of plaintiff's employees, if any, consisted of their failure to lock the casters or take other steps to stabilize the chair while they were assisting the decedent.

Although the insurer's duty to defend an action is generally determined by the pleadings, facts learned from the insured and facts discoverable by reasonable investigation may also be considered. *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. at 692, 340 S.E.2d at 377-78. Therefore, the affidavits filed by plaintiff in this case are relevant to the determination of defendant's duty to defend. Plaintiff was not required to establish ultimate liability, however, but only to show that the facts of the claim were within the coverage of the policy. *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. at 691, 340 S.E.2d at 377; *W & J Rives, Inc. v. Kemper Insurance Group*, 92 N.C. App. 313, 317-18, 374 S.E.2d 430, 433 (1988), *disc. rev. denied*, 324 N.C. 342, 378 S.E.2d 809 (1989).

Our courts have not previously construed a professional services exclusion in an insurance policy. Provisions which exclude liability coverage are not favored, however, and any ambiguities must be construed against the insurer and in favor of the insured. *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 318 N.C. 534, 547, 350 S.E.2d 66, 73 (1986). The policy in this case excludes liability "arising out of" the providing or failure to provide professional services. Dialysis treatment is clearly a professional service. In *State Capital*, however, our Supreme Court held that "arising out of" language in an insurance policy exclusion must be strictly con-

strued to require that the excluded cause be the sole proximate cause of the injury. *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 318 N.C. at 547, 350 S.E.2d at 74. In this case, the decedent's injury did not result from the dialysis treatment itself but from her attempt to get out of the dialysis chair. Therefore, coverage is excluded only if any negligence with respect to assisting decedent out of the chair was a providing or failure to provide professional services. In order to resolve this issue, we must construe the term "professional services."

Those jurisdictions that have considered whether a particular act falls within a professional services exclusion have relied on the particular facts of each case and no uniform rules of interpretation have emerged. *See generally* 12 R. Anderson, Couch on Insurance 2d § 44A:123 (rev. ed. 1981 & Supp. 1988). Nevertheless, two general principles guide our determination in this case. First, a "professional service" is generally defined as one arising out of a vocation or occupation involving specialized knowledge or skills, and the skills are mental as opposed to manual. *See Smith v. Keator*, 21 N.C. App. 102, 105-06, 203 S.E.2d 411, 415, *aff'd*, 285 N.C. 530, 206 S.E.2d 203, *appeal dismissed*, 419 U.S. 1043, 95 S.Ct. 613, 42 L.Ed. 2d 636 (1974) (quoting *Marx v. Hartford Accident & Indem. Co.*, 183 Neb. 12, 14, 157 N.W.2d 870, 872 (1968) ); Black's Law Dictionary 1089 (5th ed. 1979). Second, the determination of whether a particular act or omission falls within the scope of a professional services exclusion depends upon the nature of the activity rather than the position of the person responsible for the act or omission. *See Gulf Ins. Co. v. Gold Cross Ambulance Serv. Co.*, 327 F. Supp. 149, 152 (W.D. Okla. 1971).

Cases from other jurisdictions reveal that the courts have reached conflicting results under facts somewhat similar to the facts in this case. Several courts have held that the claims were excluded from coverage. *See Antles v. Aetna Casualty and Surety Co.*, 221 Cal. App. 2d 438, 34 Cal. Rptr. 508 (1963) (injury resulted when heat lamp being used in chiropractor's treatment fell on the patient); *Brockbank v. Travelers Ins. Co.*, 12 A.D.2d 691, 207 N.Y.S.2d 723 (1960) (injury which resulted when the patient fell from her bed was allegedly caused by negligence in adjusting sideboards); *Harris v. Fireman's Fund Indem. Co.*, 42 Wash. 2d 655, 257 P.2d 221 (1953) (injury caused by collapse of defective treatment table). Other courts have held that the claims were not excluded because the particular acts or omissions involved did not require special

skills. *See Gulf Ins. Co. v. Gold Cross Ambulance Serv. Co., supra* (ambulance service held not to be a professional service); *Keepes v. Doctors Convalescent Center, Inc.*, 89 Ill. App. 2d 36, 231 N.E.2d 274 (1967) (child who was receiving care in a home for retarded children suffered burns from a radiator); *D'Antoni v. Sara Mayo Hosp.*, 144 So. 2d 643 (La. Ct. App. 1962) (fall from bed caused by lack of siderails); *American Casualty Co. v. Hartford Ins. Co.*, 479 So. 2d 577 (La. Ct. App. 1985) (patient fell from an examination table). *See also Demandre v. Liberty Mutual Insurance Company*, 264 F.2d 70 (5th Cir. 1959) (whether coverage was excluded for a claim based upon the failure to provide sideboards on a bed was a question of fact).

We find it significant that those courts which have held that coverage was excluded did not employ the strict rule of construction against the insurer that we must follow in this case. In this regard, we note that defendant has cited *American Policyholders Ins. Co. v. Michota*, 156 Ohio St. 578, 103 N.E.2d 817 (1952). In *Michota*, the court held that a professional liability policy provided coverage for a claim arising out of a patient's fall from a specially designed chiropodist's chair. Unlike the present case, however, *Michota* involved a policy which provided coverage for claims based upon professional services, not a policy which excluded such coverage. As our Supreme Court made clear in *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, policy provisions which provide coverage are liberally construed to favor coverage, while exclusions are strictly construed to the same end. 318 N.C. at 538, 350 S.E.2d at 68. Thus, although we are not deciding the question of coverage under a professional liability policy, the claim in this case could come within such coverage and yet not fall within a professional services exclusion. The fact that coverage may exist under another policy does not affect our interpretation of the exclusion at issue in this case. *State Capital Ins. Co. v. Nationwide Mutual Ins. Co.*, 318 N.C. at 547-48, 350 S.E.2d at 74.

For similar reasons, we do not find our decision here to be affected by whether or not the claim falls within the statutory definition of medical malpractice actions. *See* G.S. 90-21.11, 21.12. The statutory definition of medical malpractice is a broad one. *See Watts v. Cumberland County Hosp. System*, 75 N.C. App. 1, 9-10, 330 S.E.2d 242, 249 (1985), *rev'd on other grounds*, 317 N.C. 321, 345 S.E.2d 201 (1986). This Court has held that negligence actions against health care providers may be based upon breaches

of the ordinary duty of reasonable care where the alleged breach does not involve rendering or failing to render professional services requiring special skills. *Burns v. Forsyth Co. Hospital Authority*, 81 N.C. App. 556, 565-66, 344 S.E.2d 839, 846 (1986); *Norris v. Hospital*, 21 N.C. App. 623, 626, 205 S.E.2d 345, 348 (1974). Therefore, a claim for medical malpractice as defined by statute does not as a matter of law fall within a professional services exclusion in an insurance policy which is strictly construed in favor of coverage. We express no opinion, however, as to whether the claim in this case is a medical malpractice action under the statutes.

Under the rule of construction which requires us to construe all ambiguities in favor of coverage, we hold that the term "professional services," when it appears in a provision excluding coverage, must be interpreted to mean only those services for which professional training is a prerequisite to performance. The claim at issue in this case does not arise solely from the furnishing or failure to furnish such services. Plaintiff's uncontradicted affidavits establish that, if plaintiff's employees were negligent, their negligence consisted of (i) failing to lock the casters on the dialysis chair, (ii) failing to stabilize the chair by other means, or (iii) failing to adequately support the decedent as she rose. The performance of these acts would not require any special skills or training. Although the dialysis chair was a specialized piece of equipment, the injury was not related to any special function of the chair but merely resulted from the presence of casters on the chair which enable it to be easily moved. The injury may have been avoided by simply locking the casters or holding the chair. These tasks are purely manual and no special training is required for a person to know that a chair with casters may move when someone attempts to rise from it.

Accordingly, we hold that plaintiff's policy provided coverage for the wrongful death claim and, therefore, defendant's refusal to defend the action rendered it liable for the amount of the settlement and the expenses incurred by plaintiff in obtaining the settlement. For the foregoing reasons, the trial court's entry of summary judgment for plaintiff is affirmed.

Affirmed.

Judges WELLS and PHILLIPS concur.